**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

JOHN GIBSON, in his Individual
Capacity and d/b/a "JOHN GIBSON &
ASSOCIATES"

　　　　　　Plaintiff,

vs.　　　　　　　　　　　　　　　　　Case No. 5:11-cv-00039-C

TEXAS DEPARTMENT OF INSURANCE,
DIVISION OF WORKERS' COMPENSATION;
and ROD BORDELON, Commissioner,
Texas Department of Insurance, Division of
Workers' Compensation, in His Official Capacity

　　　　　　Defendants.

---

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS**

---

# TABLE OF CONTENTS

Table of Contents ................................................................................................ 2

Table of Cases Cited ...................................................................................... 3, 4, 5

Facts .............................................................................................................. 6

Procedural Summary ......................................................................................... 8

Argument & Authority ........................................................................................ 9

     *1.*   *The Rule 12(b)(6) Standard* ....................................................... 9

     *2.*   *This Court should deny the Defendant's Motion to Dismiss because the Plaintiff's Pleadings do state a cause of action upon which relief can be granted.* ................................................................. 10

     *3.*   *The Defendant has failed to demonstrate that Plaintiff's URL cannot be considered protected speech, and the issues in this case are far deeper than Plaintiff's URL alone* ............................................. 11

     *4.*   *The Plaintiff has stated a case for an unconstitutional interference with property rights* ........................................................................ 17

     *5.*   *The Plaintiff has shown facts sufficient to raise an issue of whether the Defendant's regulatory action is pre-empted by federal law under the Anti-Cybersquatting Consumer Protection Act* ...................... 18

     *6.*   *The Defendant's Motion is silent as to Plaintiff's claims under the Federal Declaratory Judgment Act* ........................................ 22

Conclusion ...................................................................................................... 22

Prayer ............................................................................................................. 23

Signature Block ................................................................................................ 23

Certificate of Service ........................................................................................ 24

## TABLE OF CASES CITED

*44 Liquormart v. Rhode Island,*
   517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) .......................................13

*Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc.,*
   989 F.Supp. 1276 (C.D. Cal. 1997)......................................................................11

*Barnes v. Glen Theatre, Inc.,*
   501 U.S. 560 (1991)............................................................................................14

*Bell v. Burson,*
   402 U.S. 535 (1971) ..........................................................................................17

*Bihari v. Gros,*
   119 F.Supp. 2d 309 (S.D.NY 2000) ....................................................................7

*City of Cincinnati v. Discovery Network, Inc.,*
   507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993). .....................................15

*Cohen v. California,*
   403 U.S. 15 (1971)............................................................................................14

*Conley v. Gibson,*
   355 US 41, 78 S.Ct. 99 (1957).............................................................................9

*Connick v. Myers,*
   462 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 ..................................................15

*Cvent, Inc., v. Eventbrite,*
   No. 1:10-cv-00481, E.D.Va., Alexandria Division (Memorandum Op.
   Sept. 14, 2010) .................................................................................................19

*Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.,*
   472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985) .......................................15

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.,*
   547 F.3d 1095 (9th Cir. 2008) ..........................................................................21

*Fuentes v. Shevin,*
   407 U.S. 67 (1983) ...........................................................................................17

*GoForit Entm't, LLC v. Digimedia.com L.P.,*
   2010 U.S. Dist. Lexis 12033 (N.D. Tex. October 25, 2010) .................................11

<u>TABLE OF CASES CITED (CONT'D)</u>

*Jews for Jesus v. Brodsky*,
    993 F.Supp. 282 (D.N.J. 1998) ...........................................................................11

*Kaiser Aluminum & Chem. Sales. Inc. v. Avondale Shipyards, Inc.*,
    677 F.2d 1045 (5th Cir. 1982) ..............................................................................9

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*,
    507 US 163, 113 S.Ct. 1160 (1993) ......................................................................9

*Machinists v. Wisconsin Emp. Rel. Commission*,
    427 U.S. 132 (1976) ...........................................................................................20

*McGregory v. City of Jackson*,
    504 F.Supp.2d 143 (5th Cir. 2007) ......................................................................10

*Memphis Light, Gas & Water Div. v. Craft*,
    436 U.S. 1 (1978) ...............................................................................................17

*Name Space, Inc. v. Network Solutions, Inc.*,
    202 F.3d 573 (2d Cir. 2000) ...............................................................................12

*Near v. Minnesota*,
    283 U.S. 697 (1931) ...........................................................................................14

*Nebraska Press Ass'n v. Stuart*,
    427 U.S. 539 (1976) ...........................................................................................14

*OBH, Inc. v. Spotlight Magazine, Inc.*,
    86 F.Supp.2d 176 (W.D.N.Y. 2000) ............................................................. 12-13

*Planned Parenthood Fed. of America v. Bucci*,
    1997 W.L. 133313 (S.D.N.Y. March 24, 1997),
    *aff'd* 152 F.3d 920 (2d Cir. 1998), *cert denied* 525 U.S. 834 (1998) ...................12

*Sallen v. Corinthians Licenciamentos LTDA*,
    273 F.3d 14, 19 (1st Cir. 2001) ...........................................................................12

*San Diego Bldg. Trades Council v. Garmon*,
    359 U.S. 236 (1959) ...........................................................................................20

*Snyder v. Phelps*,
    ___ U.S. ____, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) .....................................15

### TABLE OF CASES CITED (CONT'D)

*Sporty's Farm, LLC. V. Sportsman's Mkt., Inc.*,
    202 F.3d 489 (2d Cir. 2000) ..................................................................20

*U.S. v. O'Brien,*
    391 U.S. 367 (1968) ...........................................................................14

*U.S. v. Schwimmer*,
    279 U.S. 644 (1929)(Holmes, J. Dissent) ............................................13

### STATUTES

15 U.S.C. § 1125(d)(1)...............................................................17, 19, 21

15 U.S.C. § 1127.................................................................................11

42 U.S.C. § 1983 .............................................................9, 10, 11, 20, 22

42 U.S.C. § 1985 ...............................................................................10

42 U.S.C. § 1986 ...............................................................................10

TEXAS LABOR CODE § 419.002 ....................................7, 8, 9, 14, 15, 16, 18, 19, 20, 21

VA Code Ann. § 18.2-152.3. ..................................................................19

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT:

Plaintiff JOHN GIBSON, in his Individual Capacity and d/b/a "JOHN GIBSON & ASSOCIATES" ("Plaintiff") submits this Brief in Support of his Response in Opposition to the Defendants' Rule 12 Motion to Dismiss.  In opposition to this Motion, Plaintiff respectfully shows the Court as follows:

### FACTS

The Texas Workers' Compensation system is an amalgam of administrative law, regulation, and insurance implementation, designed to afford injured workers and their families access to medical care and income benefits needed due to a work related injury, and also afford protections and a framework for social responsibility for Texas employers.  Prior to reforms in 1988, Texas employers paid over $3 billion in premiums annually.[1]  Since that time, the annual premiums paid by Texas employers has decreased to approximately $1.7 billion. Issues related to Texas Workers Compensation law, industry, and practice are matters of serious public concern. These issues involve policies, politics, and expenditure of large sums of corporate and private money and tax dollars, and  touch and affect taxpayers, workers, employers, insurance carriers, labor unions, medical providers and attorneys throughout the state of Texas.

For many months prior to the commencement of this litigation, Plaintiff wrote and published the Texas Workers' Compensation Law Blog, (hereinafter "The Blog") as

---

[1] Research and Oversight Council on Workers' Compensation, *An Examination of Strengths and Weaknesses of the Texas Workers' Compensation System* (1998). http://www.tdi.state.tx.us/reports/wcreg/sw.html.

a means for the scholarly discussion and dissemination of information concerning recent legal developments in the field of Workers' Compensation law in Texas.  The Blog is made available on the internet at the internet domain name[2], or URL "texasworkerscomplaw.com."  A copy of the landing page, or initial page of Plaintiff's Blog is attached to Plaintiff's Amended Complaint [Doc. 13] as Exhibit "B."

On or about February 7, 2011, Plaintiff received a Cease and Desist order from the Texas Department of Insurance, Division of Workers' Compensation, finding him in violation of TEXAS LABOR CODE § 419.002, for "inappropriately using the words 'Texas' and 'Workers' Comp' in the internet URL http://www.texasworkerscomplaw.com/" Plaintiff was ordered to immediately discontinue in order to come into compliance. Plaintiff was held to be in violation of TEXAS LABOR CODE § 419.002 without benefit of a hearing, or availability of an appeal, and with no meaningful or adequate modicum of due process.  A copy of this "Cease and Desist" order is attached to Plaintiff's Amended Complaint [Doc. 13] as Exhibit "C."  While the letter does seem to contain an invitation to provide a written response if "you feel that a violation did not occur," Plaintiff would show that this is an illusory offer, as there is no means for, procedure for, or right to a hearing on, or an appeal from a determination of violation of § 419.002, and the violation had already been administratively determined to have occurred.

---

[2] A "domain name" is a proprietary and unique address for locating specific content on the internet, registered by a company or internet content provider, to allow individual users to easily and rapidly locate the providers' website.  *See Bihari v. Gros, 119 F.Supp. 2d 309, 311 (S.D. NY 2000).*

PROCEDURAL SUMMARY

This is an action to construe the constitutionality of § 419.002, TEXAS LABOR CODE, directly and as applied to the Plaintiff.

Plaintiff sued the TEXAS DEPARTMENT OF INSURANCE, DIVISION OF WORKERS' COMPENSATION and her Chief Executive Officer, ROD BORDELON, in his Official Capacity.

On March 17, 2011, Defendants filed their Rule 12(b) Motion to Dismiss and Brief in Support [Doc. 10], challenging the jurisdiction of this Court over the TEXAS DEPARTMENT OF INSURANCE, WORKERS' COMPENSATION DIVISION, under the Eleventh Amendment to the United States Constitution.  Defendants did not contest jurisdiction of this Court as to ROD BORDELON, in his Official Capacity, and raised no other Rule 12(b) matters at that time.  Plaintiff, in his response to Defendant's First Rule 12(b) Motion, conceded the jurisdictional issue, and amended his complaint to remove direct claims against the TEXAS DEPARTMENT OF INSURANCE, WORKERS' COMPENSATION DIVISION.

On April 11, 2011, Defendant ROD BORDELON filed his Motion to Dimiss and Supporting Brief [Doc. 15], arguing that Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.  Plaintiff opposes Defendant's Motion to Dismiss, and argues Defendant's claims in this regard are without merit and should be overruled.

Plaintiff incorporates all of the facts and causes of action pleaded in his Original Complaint [Doc. 1] and in his Amended Complain [Doc. 13] as if set forth herein in their entirety.

Defendant's Motion for partial dismissal seeks dismissal of Plaintiff's claims under 42 U.S.C. § 1983 on the basis that a computerized URL[3] is not protected speech, and therefore, Defendant contends, Plaintiff cannot allege claims against the Defendant based on the Defendant's attempts to prohibit Plaintiff from usage of his URL under § 419.002, TEXAS LABOR CODE. Defendant further states that the Plaintiff has shown no facts sufficient to show that the Defendant's actions were subject to the federal Anti-Cybersquatting Consumer Protection Act ("ACPA") and argues that Plaintiff's claims for pre-emption should be dismissed.

### ARGUMENT & AUTHORITY

*1. The Rule 12(b)(6) Standard*

In considering a Rule 12(b)(6) motion, the complaint should be construed in the light most favorable to the plaintiff, and all well-pleaded allegations should be accepted as true, as well as reasonable inferences that may be drawn from them.[4] When the allegations, if proved, will establish a valid claim for relief under applicable substantive law, the Motion should be denied.[5]

---

[3] A "URL" is a *uniform resource locator*, or a domain name, which is a unique and discreet location name for location of content on the internet, much like a street address would be used to locate items in the physical world.

[4] *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 US 163, 164, 113 S.Ct. 1160, 1161 (1993); *Kaiser Aluminum & Chem. Sales. Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

[5] *Conley v. Gibson*, 355 US 41, 45-46, 78 S.Ct. 99, 102 (1957).

In order to show an entitlement to relief under Rule 12(b)(6), the Defendant must show that he is entitled to dismissal based on the facts *as alleged by Plaintiff*, not as the Defendant would <u>like</u> them to be.[6]

2. <u>This Court should deny the Defendant's Motion to Dismiss because the Plaintiff's Pleadings do state a cause of action upon which relief can be granted.</u>

The Plaintiff requests this Court deny the Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Plaintiff's pleadings do plead claims upon which relief can be granted – namely the redress for alleged constitutional violations pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. Specifically, Defendant Rod Bordelon, acting in his official capacity as Commissioner of the Texas Department of Insurance, Workers' Compensation Division, and persons acting under his authority, sought to deprive Plaintiff from exercise of his free speech rights protected under the First Amendment of this United States Constitution, and to deprive him of lawful use of his internet domain as a proper forum for so doing. Further, Defendant's efforts to prohibit Plaintiff from usage of his domain name "<u>texasworkerscomplaw.com</u>" in any manner, and specifically as a forum for exercise of his First Amendment rights, operate as an unlawful taking of Plaintiff's property, as there is no possible use that Plaintiff could make of his internet domain name which would not be (1) in violation of the statute, and (2) contrary to the cease and desist order issued by the Defendant. As explained below, the activities of the defendant

---

[6] *McGregory v. City of Jackson*, 504 F.Supp.2d 143, 146 (5th Cir. 2007).

violated the rights of Plaintiff under the First, Fourth, Fifth, and Fourteenth

Amendments of the United States Constitution.

3. _The Defendant has failed to demonstrate that Plaintiff's URL cannot be considered_
   _protected speech, and the issues in this case are far deeper than Plaintiff's URL_
   _alone._

The Defendant claims that Plaintiff's URL is not protected speech, and that

Plaintiff has therefore failed to state a cause of action under 42 U.S.C. § 1983 upon

which relief can be granted.  While this case does present some rather unique legal

issues, it is axiomatic that governmental regulation of speech on the basis of its

content does, in fact, rise to a concern of constitutional dimensions, and the Plaintiff

has stated a cause of action based on the defendant's attempt to regulate the content

of his domain name under statute.

In order to fully explain the Plaintiff's claims in their proper context, it is helpful to

explore a little more about the Uniform Resource Locator ("URL").  A "domain name" is

"any alphanumeric designation which is registered with or assigned by any domain

name registrar."[7] A URL, or domain name, as the terms are interchangeably used,

represents an individual's address where they can be found on the internet.[8]  Internet

website operators register domain names that identify the address where a website

---

[7] 15 U.S.C. § 1127.

[8] "Domain names are used to locate information on the Internet.  Each computer or network linked to the Internet has a unique numerical address, called an Internet Protocol number ("IP number").  An IP number is four groups of digits separated by decimal points, for example, '013.917.114.41.' These IP numbers are converted into a more user-friendly, letter based format called a 'domain name' by specialized computers called 'domain name servers.'" _Jews for Jesus v. Brodsky_, 993 F.Supp 282, n3 (D.NJ 1998)(citing _Academy of Motion Picture Arts and Sciences v. Network Solutions, Inc._, 989 F.Supp. 1276, 1997 U.S.Dist. Lexis 20806, *2, 1997 W.L. 810472, at *5, n.1 (C.D. Cal. 1997).)

can be found. [9,10] An internet user obtains exclusive rights to use a particular second-level domain name by entering into a registration agreement with a domain name registrar, in exchange for payment of a fee, thereby acquiring exclusive rights to use of that second-level domain name.[11]  In this case, for example, the Plaintiff registered and obtained exclusive rights to the use of the second-level domain name "texasworkerscomplaw.com" by payment of a fee to a registrar.  The fact that Plaintiff paid a fee for usage of this domain name gives Plaintiff a property interest in the second-level domain name.

As the Defendant has pointed out, relatively few cases have considered domain names in the context of the First Amendment.  In *Name Space, Inc. v. Network Solutions, Inc.*,[12] the court held that "[d]omain names . . . per se are neither automatically entitled to nor excluded from the protections of the First Amendment." However, the limitation in the cases cited by the Defendant are evident from the nature of the cases themselves.  Each of the cases cited by the Defendant involved delineation of the rights of competing private users disputing ownership rights to domain names, not governmental regulation of the content of a domain name, and an attempt to proscribe operation of a legitimate first amendment forum by shutting off

---

[9] *GoForIt Entm't, LLC v. Digimedia.com L.P.*, 2010 U.S. Dist. Lexis 12033 (N.D. Tex. October 25, 2010).

[10] Domain names consist of at least a top level domain name and a second level domain.  Common top level domain names include ".com," ".org," ".gov," and ".net", *Id.*

[11] *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 19 (1st Cir. 2001).

[12] *Name Space, Inc. v. Network Solutions, Inc.*, 202 F.3d 573, 585 (2d Cir. 2000).

access to the domain itself.[13]  Because these cases did not involve state action, the considerations were different.

This is not a case arising between two private business interests, where the court is being asked to mediate competing private property rights of individuals or corporations, but rather this is a case of government censorship, where the Defendant, a government actor, has acted under state authority to proscribe Plaintiff's use of certain words.  Thus, this case is more closely analogous to governmental restriction or restraint of speech in a public forum (the internet) based on content alone.  Whether the Defendant's speech, as exemplified by his domain name, is communicative or not does not determine whether it is _entitled_ to First Amendment protection, but rather _how much_ protection, and what level of interest the government must have before it is allowed to regulate that speech.

Be they spoken, written, or symbolic, words and the ideas or definitions conveyed therewith, may not be restricted by the State of Texas unless there is some compelling state interest.  Here, the State of Texas has failed to show that John Gibson's use of the words "Texas" "Workers'" and "Comp"—be it in a letter or in a URL—is false or misleading in any way.[14]  As such, there is no compelling reason to

---

[13] E.g., _Planned Parenthood Fed. of America v. Bucci_, 1997 W.L. 133313, *1 (S.D.N.Y. March 24, 1997), _aff'd_ 152 F.3d 920 (2d Cir. 1998), _cert denied_ 525 U.S. 834 (1998). (Defendant Catholic Radio asserted First Amendment defense in suit by Planned Parenthood for bad faith registration of the domain name "plannedparenthood.com."; See also _OBH, Inc. v. Spotlight Magazine, Inc._ 86 F.Supp.2d 176, 197 (W.D.N.Y. 2000) ("Use of another's trademark is entitled to First Amendment protection only when the use of that mark is part of a communicative message, not when it is used merely to identify the source of a product.")

[14] See, eg. _44 Liquormart v. Rhode Island_, 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996) (Holding statutes prohibiting advertisements informing the public about retail prices of alcohol unconstitutional as an impermissible abridgment of free speech which did not directly advance any governmental interest asserted.)

suppress them.  In the end, it is not the speech we love, but the speech we hate that must be protected.[15]  As much as the Texas Legislature must have detested a citizen using the words "Texas Workers' Comp" to outlaw them via threat of a $5,000.00 daily fine via § 419.002 of the Texas Labor Code, seemingly more offense communication— nude dancing,[16] burning a draft card,[17] wearing a jacket with the words "Fuck The Draft" in a courthouse,[18] have fallen within the ambit of First Amendment protection.

Once the words "TexasWorkersCompLaw" were inserted, both in the URL and in the contents of the pages therein, the expression was made,[19] shifting the burden to the state to prove a compelling interest in suppressing those words. None exists. Section 419.002 is a classic prior restraint, both on it's face and as applied to John Gibson, which bears a heavy burden for showing justification for imposition of the imposition of such a restraint.[20]  Such prior restraint is perilous to the very core actions of a free citizenry and should not be upheld. The fact that John Gibson used the

---

[15] *U.S. v. Schwimmer*, 279 U.S. 644, 654-55 (1929) (Holmes, J. dissenting).
[16] *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991).

[17] *U.S. v. O'Brien*, 391 U.S. 367 (1968).

[18] *Cohen v. California*, 403 U.S. 15 (1971).

[19] Further adding to the communicative nature of the URL is the fact that the very words used in the URL contribute to the ranking of a page on an internet search engine, such as Google, Bing, or Yahoo. Thus, a page which is located at a domain name of "texasworkerscomplaw.com" will have higher organic search ranking, and a higher priority in search results, than a page merely containing the words "Texas Worker's Comp. Law" somewhere within the content of the page. Thus building the communicative message into the URL acts as a conduit to facilitate distribution of the message to the intended audience, and enables the audience to more readily locate and perceive the message. See Ecommerce Blog – Ecommerce Articles, Tips and News (May 2, 2011). http://ecommerceblog.mightymerchant.com/uncategorized/exact-match-domains-you-betcha/

[20] *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539 (1976), see also *Near v. Minnesota*, 283. U.S. 697 (1931).

exercised these words in a URL leading to further discussion on his web page does not cost him or the rest of the citizenry free expression does not forfeit his right to engage in communication with other interested individuals. It is the very use of the URL—like a billboard, road sign, that may lead to further, important communication, by acting as a conduit to the facilitation of protected speech.[21]

One must look no further than the recent case of *Snyder v. Phelps*, ___ U.S. ____, 131 S.Ct. 1207, 179 L.Ed.2d 172 (2011) for an example of the importance that is placed upon First Amendment rights of free speech accorded to individuals in our country.  Whether speech is protected by the First Amendment or not turns largely upon whether that speech is of public or private concern, as determined by all the circumstances of the case.  Speech on matters of public concern is at the heart of the First Amendment's protection,[22] and occupies the "highest rung of the hierarchy of First Amendment values,"[23] entitling such speech to special protection. As Justice Roberts wrote in *Snyder*, the question of whether the speech is of public or private concern requires an examination of the content, form, and context of the speech as revealed by the record.[24]  Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the

---

[21] *City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993).*

[22] *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 758-59, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985).

[23] *Connick v. Myers*, 462 U.S. 138, 145, 103 S.Ct. 1684, 75 L.Ed.2d 708.

[24] *Snyder*, 131 S.Ct. at 1216.

community, or when it is a subject of legitimate news interest, ie., a subject of general interest and of value and concern to the public.[25]

This case is not a case specifically about the content of the Plaintiff's domain name, and Plaintiff does not argue that internet domain names are automatically entitled to first amendment protection.  Rather, this case is about the far more widely reaching authority of a state government, by and through its agents, to attempt to regulate the usage of common words of ordinary meaning by members of its citizenry, when those words, and the specific conjunctive use of those words which the statute purports to proscribe, are matters of public concern.

The challenged statute, § 419.002, Texas Labor Code, specifically purports to proscribe the use of the words "Texas" and "Worker's Compensation" or any term using both "Texas and "Worker's Comp" in connection with any "document, product or service."  Certainly, the various issues touching and concerning the Texas Workers' Compensation system are areas of public concern, because they relate to matters of political, social, or other concern to the community and are legitimate news interests. A simple review of the items contained in Exhibit "B" to Plaintiff's Complaint reveals that Plaintiff's usage of the words prohibited by § 419.002, and the usage of his domain name "texasworkerscomplaw.com" are certainly directed to items of public concern having to do with judicial and administrative interpretation of the various statutory provisions and administrative rules of the Texas Workers' Compensation System, and their effect on individuals.

---

[25] *Id.*

Further, the Plaintiff's domain name is only part of this case.  While the Defendant's cease-and-desist order was directed at the domain name, the statute in question is not limited in its application to domain names.  Thus, even if Plaintiff were to republish his "Texas Workers' Compensation Law Blog" under a different domain name, the name of the Plaintiff's blog, and the content of the blog, would still be violations of the § 419.002, TEXAS LABOR CODE, on the face of the statute.  By issuing the cease and desist order in this case, the Defendant not only proscribed the Plaintiff from using the domain name, but also from publishing content that facially violated the statute, as well.  The attempts by the Defendant to claim that its order should be considered only as to the *domain name* alone, are merely pretextual, and should not prevent the broader issue of a critical review and analysis of the statute, itself.

4. *The Plaintiff has stated a case for an unconstitutional interference with property rights.*

In this case, the Defendant ordered the Plaintiff to cease usage of his lawfully acquired domain name, thus depriving him of his rights to use the domain name that he had purchased, and in which he held a property interest.  Although no cases could be found specifically dealing with governmental prohibition on use of particular domain names, it is well-recognized that deprivation of an owner's property interest in analogous areas invokes the "due process" and "takings clause" of the Fourth, Fifth, and Fourteenth amendments of the United States Constitution, requiring specific

notice and opportunity to be heard.[26]  Irrespective of the particular question of whether a domain name involves free speech, any government action constructively depriving Plaintiff of a property interest, and any statute that purports to allow the government to do so, are deserving of constitutional scrutiny, and can form the basis for a cause of action under the "due process" and "takings clause" of the Fourth, Fifth, and Fourteenth amendments of the United States Constitution.  In this regard, the level of constitutional protection afforded to the domain name serves only to tell the level of scrutiny used, what process is due, and what particular test the governmental regulation must pass.

In this case, Plaintiff paid money for the registration of the domain name "texasworkerscomplaw.com."  The TDI-DWC, through Defendant Bordelon, instructed Plaintiff to cease and desist from use of the URL "texasworkerscomplaw.com."  Because the alleged statutory basis for the Defendant's cease-and-desist order arose from authority of the Commissioner under § 419.002, TEXAS LABOR CODE, prohibiting use of the words "Texas" "Workers'" and "Compensation" together, there is absolutely no possibility of any conforming use that would allow the Plaintiff to continue using his domain name for any purpose.  Thus the Plaintiff has been effectively and completely deprived of his property interest in his domain name.

5. *The Plaintiff has shown facts sufficient to raise an issue of whether the Defendant's regulatory action is pre-empted by federal law under the Anti-Cybersquatting Consumer Protection Act.*

---

[26] See, eg. *Bell v. Burson*, 402 U.S. 535 (1971) (Driver's license suspension involved property interest requiring due process); *Fuentes v. Shevin*, 407 U.S. 67 (1983) (Seizure of property pursuant to prejudgment replevin order.); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1 (1978); (Termination of electrical service by a public utility for failure to tender payment of amounts due.)

Finally, the Defendant ROD BORDELON has argued that Plaintiff's claims that this action is pre-empted by the Anti-Cybersquatting Consumer Protection Act are "unsupported by [the] pleadings or the evidence and borders on frivolous."  However, in advancing this argument, Defendant wholly and completely misses the point, and misconstrues the Plaintiff's claims.  Defendant points out that "Plaintiff has alleged no facts that Defendant has registered, trafficked in, or used *his* URL." That is most certainly true, and it was for that reason that Plaintiff did not allege an affirmative claim against Defendant for violation of the Anti-Cybersquatting Consumer Protection Act.

More to the point, Plaintiff's claims in this regard are that there is a recognized pathway and protocol developed in federal law for claims of improper domain registration, by which the right to ownership and usage of a domain name can be tested, and a well-crafted standard through case-law by which the courts may determine the parameters of ownership of and exclusive rights to use a domain name.

In 1999, during the very early days of the internet, Congress enacted the provisions of the Anti-Cybersquatting Consumer Protection Act (ACPA), now codified at 15 U.S.C. § 1125(d)(1), providing a federal framework for disputes over rights to register, traffic in, or use domain names where there is some allegation of infringement or potential infringement with a mark that is distinctive or to which the domain name might be confusingly similar.  In doing so, the congress undertook to regulate, under federal law, that new frontier known as the internet, and to provide some common ground for the fair and effective regulation of new technology.

The question of the jurisdiction of a state government to enact regulations purporting to restrict registration of internet domain names is a very unique issue, and is largely a question of first impression.  There is decidedly a framework for governmental preemption of state law by intellectual property law. In the recent case of *Cvent, Inc., v. Eventbrite*,[27] one District Court acknowledged the preemptive effect of § 301(a) of the Copyright Act over the Virginia Computer Crimes Act[28] based upon the co-extensiveness of the two regulations as applied to the subject matter of the case. By contrast, it has been held that state unfair trade practice remedies are not preempted by the ACPA. *Sporty's Farm, LLC. V. Sportsman's Mkt., Inc.*[29]

A good-faith argument exists in this case for implied preemption, because the federal regulatory scheme is so pervasive as to occupy the field in that area of law.  For example, courts have held that the National Labor Relations Act (NLRA) preempts state laws directed at conduct actually or arguably prohibited or protected by the NLRA or conduct Congress intended to leave unregulated. [30]

As applied to the specific domain name registered by the Plaintiff, §419.002 TEXAS LABOR CODE, purports to restrict any person from registering any internet domain name containing certain words or phrases.  By enacting the Anti-Cybersquatting Consumer Protection Act ("ACPA") congress has shown its intent to "occupy the field"

---

[27] *Cvent, Inc., v. Eventbrite*, No. 1:10-cv-00481, E.D.Va., Alexandria Division (Memorandum Op. Sept. 14, 2010).

[28] VA Code Ann. § 18.2-152.3.

[29] *Sporty's Farm, LLC. V. Sportsman's Mkt., Inc.*, 202 F.3d 489, 500-501 (2d Cir. 2000).

[30] *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244 (1959); *Machinists v. Wisconsin Emp. Rel. Commission*, 427 U.S. 132, 140-48 (1976).

in the area of determining what domain names may be registered and by whom, and has set forth standards for determination of rights to domain names when there is a conflict in the rights asserted by multiple parties.

It would be difficult to envision a world where each state and territory was free to make its own regulations governing the content of domain names registered on the internet, not to mention the multifaceted jurisdictional issues which would arise.  What if, for example, in addition to the State of Texas prohibiting domain registration containing the words "Texas" "Workers" and "Compensation," another state, such as Oklahoma, wanted to prohibit registration of *any* domain names with the word "Oklahoma" in them. Other states might follow suite, and might even turn their eyes toward prohibition of registrations with specific classes of words in them, such as words describing alcoholic beverages, or words describing specific locations or activities.  Perhaps the State of Arizona would prohibit domain names containing the term "Grand Canyon." The result would be a hodgepodge of state regulation directed solely to the content of internet domain names, and would result in domain names in the global arena of the internet, being subjected to an infinite variety of state-wide and local regulations.

The Defendant has not shown, but would be required to show under the ACPA, that the specific words regulated by §419.002 TEXAS LABOR CODE, are somehow distinctive or unique in nature, that the Defendant has the exclusive rights to use the words as a trademark, and that the Plaintiff's domain name was identical or

confusingly similar or dilutive of the mark,[31] using appropriate Lanham Act standards. In order to divest Plaintiff of his domain name, the Defendant would further have to show that there was some bad faith intent to profit from the use of a domain name which unlawfully conflicts with a mark.  Even then, Plaintiff would have the potential for a First Amendment defense.[32]

6. _The Defendant's Motion is silent as to Plaintiff's claims under the Federal Declaratory Judgment Act._

The salient issues in this case is not merely the constitutionality of the Defendant's enforcement attempts, and the effect thereof to curtail the Plaintiff's expression of his message, but the broader issues of constitutionality of the statute, and specifically whether the statute is vague and overly broad, or whether it is narrowly tailored to serve a specific governmental interest.

This broader interest, and the standing of the Plaintiff to bring an action for constitutional scrutiny of the statute, and Plaintiff's underlying claims for declaratory and injunctive relief that the statute is unconstitutionally void _ab initio_, have not been challenged by the Defendant, and Defendant does not seek dismissal of those claims.

**CONCLUSION**

---

[31] Eg. 15 USC § 1125(d)(1)(A)(ii).

[32] _See, eg., E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc._, 547 F.3d 1095 (9th Cir. 2008)(affirming First Amendment defense under Lanham Act claim).

Plaintiff requests that this Court deny the Defendant's motion for partial dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Plaintiff's complaint does plead claims upon which relief can be granted – namely the redress for alleged constitutional violations pursuant to 42 U.S.C. § 1983.  Specifically, the Defendant's efforts to prohibit Plaintiff from usage of and constructively deprive Plaintiff from enjoyment and possession of his property interests in his internet domain name, and thereby curtail Plaintiff's freedom of speech, in violation of the First, Fourth, Fifth and Fourteenth Amendments of the United States Constitution and other related constitutional provisions.

<u>P<small>RAYER</small></u>

Plaintiff respectfully prays that the Defendant's Motion to Dismiss based on Rule 12(b)(6) F.R.C.P. be, in all things, denied, and, alternatively, that Plaintiff be granted leave to amend in order to address any insufficiency of his allegations that the Court may determine exist.

Respectfully submitted,

**Hurley & Guinn**
1805 13th Street
Lubbock, Texas 79401
Telephone (806) 771-0700
Facsimile (806) 763-8199
Email: dmguinn@swbell.net
David M. Guinn, Jr.
SBN 08599100

-- and –

By: _____

HOGAN LAW FIRM, PC
Robert S. Hogan
State Bar No. 00796767
Victor Rodriguez, II
State Bar No. 24063577
1801 13th Street (79401)
P.O. Box 2277
Lubbock, Texas 79424
Telephone:  (806) 771-7900
Facsimile:  (806) 771-7925
Email:  Robert@hogan.us

ATTORNEYS FOR THE PLAINTIFF

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of the above and foregoing document has been served upon the following counsel of record in the above-entitled and number cause in accordance with Rule 5, FRCP, and LR 5.1(d) on the 2nd day of May, 2011.

Shelley N. Dahlberg
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

_____